24337

STATE of South Carolina, Respondent v. Roosevelt HUNTER, Appellant.

(463 S.E. (2d) 314)

Supreme Court

*Daniel T. Stacey, Chief Attorney, South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Charles Molony Condon, Attorney General, Donald J. Zelenka, Chief Deputy Attorney General, Harold M. Coombs, Jr., Senior Assistant Attorney General, William Edgar Salter, III, Assistant Attorney General,* Columbia; and *Solicitor Holman C. Gossett, Jr.,* Spartanburg, *for respondent.*

Heard Sept. 20, 1995.

Decided Oct. 30, 1995.

WALLER, Justice:

Hunter was convicted of kidnapping and armed robbery. We affirmed his direct appeal. *State v. Hunter*, Op. No. 90-MO-202 (S.C. Sup. Ct. filed July 20, 1990). Thereafter, Hunter was granted postconviction relief. On retrial, Hunter was again convicted of kidnapping and armed robbery. He appeals his second conviction, claiming racial prejudice undermined the jury's verdict. We affirm.

## FACTS

After the verdict was returned, the trial judge had the clerk poll the jury. All twelve affirmed they voted guilty.

Approximately one week after the trial, a defense attorney contacted the only black juror, Margaret Richardson (hereinafter "Richardson"). Based on information given by her, Hunter filed a Motion for New Trial or Mistrial alleging jury misconduct during deliberation. The trial judge held an *in camera* hearing, where Richardson testified three things occurred in the jury room which intimidated and forced her to change her verdict from not guilty to guilty.

First, a juror named Christine (last name unknown, hereinafter "Christine") used the word "nigger" when referring to some testimony given at the trial. At trial, one witness quoted someone else as having said, "We'll let the black boys work this weekend." During deliberations, Christine misquoted this witness, saying, "Let the niggers work." After she said it, she caught herself, covered her mouth with her hand and said "Oop[s]." Richardson said this upset her.

The second allegation involved this same juror. Apparently, Christine and Richardson's niece were planning on moving to Columbia and living together. At some point during deliberations, Christine was "saying that if Roosevelt [Hunter] got out, supposing he got out and he come back and killed some of your family, your niece might be killed." Richardson perceived this to be a threat to her family's safety.

The third allegation was that several jurors gathered around Richardson, touched her shoulders and said, "You know he's guilty, you know he's guilty." Richardson testified that throughout deliberations she felt Hunter was innocent.

After the hearing, the trial judge denied Hunter's motion for a new trial. He appeals.

## DISCUSSION

The state argues as a threshold issue that Richardson's testimony was incompetent for consideration by the trial judge. We disagree.

As a general rule, juror testimony may not be the basis for impeaching a jury verdict.[1] Normally, courts should not intrude into the privacy of the jury room to scrutinize how jurors reached their verdict. However, other jurisdictions have made exceptions based on the nature of the alleged misconduct. When an extraneous influence is alleged, juror testimony can normally be used. If the alleged misconduct is internal, courts are more strict.[2] Normally, juror testimony involving internal misconduct is competent only when necessary to ensure due process, i.e. fundamental fairness. *See McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); *Shillcut v. Gagmon*, 827 F. (2d) 1155 (7th Cir. 1987). *See also Long*, 93 S.C. at 510-15, 77 S.E. at 62-63; *Sheppard*, 2 Bail. at 578.

We find allegations of racial prejudice involve principles of fundamental fairness. Accordingly, the trial judge was proper in considering Richardson's testimony. If a juror claims prejudice played a role in determining the guilt or innocence of a defendant, investigation into the matter is necessary. To hold otherwise would violate "the plainest principles of justice." *McDonald*, 238 U.S. at 269, 35 S.Ct. at 785, 59 L.Ed. at 1303.[3]

---

[1] *See, e.g., State v. Thomas*, 268 S.C. 343, 234 S.E. (2d) 16 (1977); *Barsh v. Chrysler Corp.*, 262 S.C. 129, 203 S.E. (2d) 107 (1974); *State v. Wells*, 249 S.C. 249, 153 S.E. (2d) 904 (1967); *State v. Parris*, 163 S.C. 295, 161 S.E. 496 (1931); *State v. Long*, 93 S.C. 502, 77 S.E. 61 (1912); *Smith v. Culbertson*, 43 S.C.L. (9 Rich.) 106 (1855); *Sheppard v. Lark*, 18 S.C.L. (2 Bail.) 576 (1832); *SCDHPT v. Galbreath*, — S.C. —, 431 S.E. (2d) 625 (Ct. App. 1993).

[2] *Tanner v. United States*, 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed. (2d) 90 (1987). *See also Commonwealth v. McCormick*, 359 Pa. Super. 461, 519 A. (2d) 442 (1986).

[3] *Cf. United States v. Heller*, 785 F. (2d) 1524, 1527 (11th Cir. 1986) ("A racially or religiously biased individual harbors certain negative stereotypes which . . . may well prevent him or her from making decisions based solely on the facts and law that our jury system requires"); *Wright v. United States*, 559 F. Supp. 1139, 1151 (E.D.N.Y. 1983), *aff'd*, 732 F. (2d) 1048 (2nd Cir. 1984), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed. (2d) 774 (1985) (decision of

Nonetheless, Hunter has not shown juror conduct denied him a fair trial. We are unconvinced what occurred in the jury room demonstrated racial prejudice toward Hunter, or that Richardson felt threatened or coerced into voting guilty.

The use of the word "nigger" by a juror was highly improper. However, she was not referring to Richardson or Hunter when she made the statement, and she was instantly aware of the inappropriateness of her words, as shown by the immediate covering of her mouth. There is no evidence other jurors agreed with her sentiments, nor is there evidence any other remarks were made. Regarding the perceived threat to Richardson's family's safety, what was said could not fairly be interpreted as a threat. Finally, Richardson's claim she was "touched on the shoulders" by other jurors is insufficient to show she was coerced into changing her vote.

Richardson's actions do not indicate she felt threatened or coerced. She at no time stopped the deliberation process in order to notify the judge of any of these things. She was polled after the verdict and indicated guilty was her verdict. Further, she was contacted by a newspaper the day after the trial and made comments to the effect that she had not wanted to vote guilty. Nevertheless, she still did nothing to notify the judge until she was contacted by the defense attorneys. She was familiar with the court system, having served on juries before, and did not feel intimidated by the trial judge. In sum, we find no error in the trial court's denial of Hunter's motion for a new trial based on allegations of jury misconduct.

The remainder of the issues are affirmed pursuant to SCACR 220(b)(1) and the following authorities: Issue II: *State v. Schmidt*, 288 S.C. 301, 342 S.E. (2d) 401 (1986) (alleged errors not preserved unless a proffer of testimony properly made on record); Issue III: *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed. (2d) 401 (1972); *State v. Drayton*, 293 S.C. 417, 361 S.E. (2d) 329 (1987), *cert. denied*, 484 U.S. 1079, 108 S.Ct. 1060, 98 L.Ed. (2d) 1021 (1988); Issue IV: *State v.*

whether to apply no-impeachment rule to allegations of racial prejudice should be made on a case-by-case basis); *Tobias v. Smith*, 468 F. Supp. 1287, 1291 (W.D.N.Y. 1979) ("There should be no injection of race into jury deliberations").

*Southerland,* 316 S.C. 377, 447 S.E. (2d) 862 (1994), *overruled on other grounds, State v. Chapman,* 317 S.C. 302, 454 S.E. (2d) 317 (1995) (court will only consider issues which are raised by contemporaneous objection or motion); *State v. Davis,* 309 S.C. 326, 422 S.E. (2d) 133 (1992), *cert. denied,* — U.S. —, 113 S.Ct. 2355, 124 L.Ed. (2d) 263 (1993); Issue V: *State v. Campbell,* 259 S.C. 339, 191 S.E. (2d) 770 (1972); *State v. Osborne,* 200 S.C. 504, 21 S.E. (2d) 178 (1942), *overruled on other grounds, State v. Torrence,* 305 S.C. 45, 406 S.E. (2d) 315 (1991).

Affirmed.

FINNEY, C.J., and TOAL, MOORE and BURNETT, JJ., concur.